IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| KENT BUESCHER, | : | |
| Plaintiff, | : | |
| v. | : | 7:07-CV-89 (HL) |
| FALCON MEZZANINE PARTNERS, LP, et al. | : | |
| Defendants. | : | |

## ORDER

Presently pending before the Court is Plaintiff's Motion to Remand (Doc. 6), and Motions to Dismiss filed by John Schnabel, Eric Rogoff, Sandeep Alva, Falcon Mezzanine Partners, LP ("Falcon Partners"), and Falcon Investment Advisors, LLC ("Falcon Advisors") (Doc. 25), Cahill, Gordon & Reindel, LLP ("Cahill") (Doc. 28), and Brandlin & Associates and James F. Davidson (Doc. 30). For the reasons set out below, the Motion to Remand is granted, and the Motions to Dismiss are denied as moot.

## I. BACKGROUND

Plaintiff Kent Buescher was the chief executive officer of Adventure Parks Group, LLC ("Adventure Parks") which owns and operates two amusements parks, Wild Adventures, and Cypress Gardens. Defendants Falcon Partners and Falcon Investment (collectively "Falcon Group") are investment companies that are

members of Adventure Parks.  Plaintiff charges that the Falcon Group and Cahill Gordon & Reindel, LLP, a law firm, hired public accounting firm Brandlin & Associates "to prepare and write a report solely to discredit and impugn Buescher, and as a broader scheme for the Falcon Group to take control of" Adventure Parks. Compl. ¶ 14.  The report and a letter accompanying it contained allegedly false, inaccurate, misleading, scandalous, and defamatory statements against Buescher. The report and letter were subsequently published to investors, managers, and lenders, and the statements in those documents were made verbally to investors and lenders.  According to the Complaint, these actions were part of a campaign that the Falcon Group orchestrated against Plaintiff so that he would be ousted from his position as CEO of Adventure Parks and the Falcon Group could take over management.

The Complaint in this case, which was filed in the Superior Court of Lowndes County, charges libel, slander, conspiracy to commit libel and slander, and tortious interference with employment against all Defendants.  The Falcon Gropup filed a notice of removal and Plaintiff has moved for remand to the Superior Court.

**A. Libel**

The Complaint states that the libelous statements "injured Buescher's reputation and exposed them (sic) to public hatred, contempt, and ridicule" and that they were made "in an effort to discredit Buescher and his family, and remove him from office."  Compl. ¶¶ 25, 27.  He seeks actual, compensatory, and general

2

damages "to be determined by the enlightened conscious of the jury." Compl. ¶ 28. He does not, however, identify what his actual or compensatory damages would be or what injury they would arise from.

### B. Slander

Plaintiff's slander claim is based on the same statements contained in the written reports, which were allegedly repeated to investors and lenders. He alleges that he was damaged by the Defendants' conduct because his reputation was "discredited and impugned." Compl. ¶ 31. He seeks actual, compensatory, and general damages "to be determined by the enlightened conscience of the jury," but again does not identify the source or amount of his actual or compensatory damages. Compl. ¶ 32.

### C. Conspiracy to Commit Libel and/or Slander

Count III asserts that the Defendants acted in concert to "attempt to overthrow the management of the Company, and take control of the Company, in order for their own profit (sic) at the expense of destroying the character and reputation of Buescher." Compl. ¶ 35. It also seeks actual, compensatory, and general damages "to be determined by the enlightened conscience of the jury," but like the other Counts, makes no mention of the source or amount of his actual or compensatory damages. Compl. ¶ 37.

### D. Tortious Interference with Employment

The Complaint also states that "at all times relevant hereto, Buescher was and

3

is the CEO and employee of" Adventure Parks. Compl. ¶ 39. It charges Defendants with conspiring to interfere with his employment relationship with Adventure Parks, and attempting to overthrow the management. It asserts that his employment relationship "has been tortuously interfered with and damaged" and that he is entitled to "damages." Compl. ¶ 43-44. Again, however, there is no allegation of how the relationship was damaged, or what the damages are to which he may be entitled. Indeed, the language of the Complaint indicates that he was not fired, see Compl. ¶ 39, and no Party has indicated otherwise.

### E. Punitive Damages and Attorney's Fees

Plaintiff also seeks punitive damages, measured by the enlightened conscious of the jury, for Defendants' actions and for their failure to publish a corrective statement or retraction. Finally, he seeks attorney's fees in the amount to be proven at a trial.

## II. ANALYSIS

### A. Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. Defendants the Falcon Group allege that removal is appropriate under diversity jurisdiction; but Plaintiff asserts that Defendants have failed to meet their burden to affirmatively demonstrate that the amount in controversy exceeds $75,000. Removability is determined by the plaintiff's pleading at the time the petition of

removal is filed. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1359 (11th Cir. 1996), *overruled on other grounds by* Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000). The removal statute is to be narrowly construed with all doubts construed against removal to federal courts. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

On a motion to remand, the removing party bears the burden of establishing federal jurisdiction by a preponderance of the evidence. Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996); Williams v. Best Buy, Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). In Lowery v. Alabama Power Co., the Eleventh Circuit Court of Appeals addressed the problem of applying the preponderance standard when the Court had only bare pleadings from which to deduce whether the jurisdictional amount was met. 483 F.3d 1184, 1210-11 (11th Cir. 2007). The court stated, "any attempt to engage in a preponderance of the evidence assessment at this juncture would necessarily amount to unabashed guesswork, and such speculation is frowned upon." Id. at 1211. Nonetheless, bound by precedent, the court continued to adhere to the preponderance standard. Id. at 1210. It held that "[i]f the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand. Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate." Id. at 1211.

Under 28 U.S.C. § 1446(b), a court assessing the propriety of removal

considers the complaint, notice of removal, and accompanying documents that the defendant received from the plaintiff. 28 U.S.C. § 1446(b); see also Lowery, 483 F.3d at 1213. "When a plaintiff seeks unliquidated damages and does not make a specific demand . . . the factual information establishing the jurisdictional amount must come from the plaintiff." Id. at 1214 n.66. When facts that would establish jurisdiction are missing from these documents, jurisdiction does not lie. Id. at 1215.

In the past, courts have looked to prior verdicts in similar cases to determine whether the verdict would likely meet the amount in controversy requirement. See, e.g., De Aguilar v. The Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993). Recently, the Eleventh Circuit addressed the questionable value of this kind of evidence in Lowrey:

> [E]vidence regarding the value of other tort claims was not received from the plaintiffs, but rather was gathered from outside sources. As such, the evidence is not of the sort contemplated by § 1446(b). Even if the defendants had received the evidence of other suits from the plaintiffs, we question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit. Looking only to this evidence and the complaint, the facts regarding other cases tell us nothing about the value of the claims in this lawsuit. Even were we to look to evidence beyond that contained within the notice of removal, in the present dispute-with a record bereft of detail-we cannot possibly ascertain how similar the current action is to those the defendants cite. Absent specific detail about the present action, the supplement in no way clarifies the aggregate value of the claims here.

Lowery, 483 F.3d at 1215. After Lowery, therefore, evidence of prior verdicts should only be considered (1) when the plaintiff provides the verdict to the defendant and

6

(2) when the facts of the cases are so similar that the values of the claims are likely to be comparable.

### B. Application

Defendants' contend that the exhibits to the Complaint demonstrate the amount in controversy is met in this case. The exhibits reveal that Plaintiff was paid $250,000 in 2005 and $134,615.52 in 2004. According to Defendants, Plaintiff's prayers for actual and compensatory damages "place his compensation squarely in controversy." Defs.'s Resp. Mot. Remand at 5. Essentially, Defendants contend that because his income was approximately $380,000 over two years, and he now claims injury to his employment relationship, those damages are likely to be above $75,000.

It is not at all clear from the documents before the Court, however, that this is the case. First, there are no facts in the reviewable documents that demonstrate how Plaintiff was injured or that give any insight regarding how to quantify his injuries. As noted above, according to the Complaint he is still CEO of Adventure Parks. He was therefore not fired and is not seeking lost income damages in the amount of his full yearly salary.[1] The bare fact of Plaintiff's salary is therefore

---

[1] In fact, in Plaintiff's Reply brief, he states that he is not seeking lost wages at all, but only those damages determined by the enlightened conscience of the jury. This assertion is belied, however, by Plaintiff's prayer for actual and compensatory damages in the body of the Complaint itself. It is plaintiff's pleading at the time the petition for removal is made that governs the issue of removability; the Court therefore disregards Plaintiff's apparent attempt to alter his demands for relief.

insufficient to establish that the amount in controversy is met for any of the asserted claims.

Defendants also argue in a footnote that the amount in controversy can be met in claims for general damages, even though they are determined by the enlightened conscience of the jury. This is undoubtedly true, but the Eleventh Circuit has placed the burden of the removing party to quantify those damages by a preponderance of the evidence, and Defendant has made no effort to do so in this case.

Defendants make a final footnote argument that Plaintiff's claim for punitive damages establishes an amount in controversy of at least $75,000. In support of this argument, they cite evidence of Georgia cases upholding punitive damage awards well over $75,000. Plaintiff did not provide this evidence to Defendants, therefore it is not the type of evidence courts are to consider. See Lowery, 483 F.3d at 1215. Furthermore, none of the cited cases appear to be sufficiently factually similar to the present dispute to establish value of the claims in this case. This evidence is therefore insufficient to establish the amount in controversy.

### III. CONCLUSION

Where a complaint is not removable on its face, a defendant has thirty days after receiving the document "from which it may first be ascertained that the case is

8

one which is or has become removable."[2] 28 U.S.C. § 1446(b). Defendants in this case therefore could have waited to file their notice of removal until discovery produced a document that proved the case was removable. They chose not to do that, and instead filed their notice of removal three days after Plaintiff filed his Complaint in state court. They cannot now claim foul play for their failure to wait for documentation that would have supported their assertion of diversity jurisdiction. See Lowrey, 48 F.3d at 1213 n.63 (recognizing that a defendant will generally need to include with his notice of removal some document received from plaintiff after the complaint is filed to demonstrate amount in controversy for purposes of removal).

Here, as in Lowrey, in light of the nature of the claims asserted it may be true that Plaintiff will recover $75,000 or more. See Lowrey, 483 F.3d 1220. Nonethless, "[t]o reach such a conclusion, we would necessarily need to engage in impermissible speculation-evaluating without the benefit of any evidence the value of individual claims." Id. Plaintiff's Motion to Remand is therefore granted, and the Motions to Dismiss are dismissed as moot.

**SO ORDERED**, this the 20th day of, May 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

---

[2] Diversity cases like the present one are subject to a limitation prohibiting removal more than one year after the action commences. 28 U.S.C. § 1446(b).

tch